# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 11-33073-WRS |
| | Chapter 7 |

JEFFERSON TYREE LUCAS,

    Debtor

THE INFINITY GROUP LLC,

    Plaintiff                                                    Adv. Pro. No. 12-3012-WRS

  v.

JEFFERSON TYREE LUCAS,

    Defendant

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for hearing on June 19, 2012, upon the Motion for Summary Judgment filed by Defendant Jefferson Tyree Lucas. For the reasons set forth below, summary judgment is entered in favor of Lucas. The Court concludes that the indebtedness owed by Lucas to Infinity is not excepted from the Debtor's discharge.

## I. FACTS

Lucas filed a petition in bankruptcy pursuant to chapter 7 in this Court on November 22, 2011. (11-33073, Doc. 1). At the time he filed bankruptcy, he owed The Infinity Group $27,000 pursuant to a consent judgment entered by the Circuit Court for Lee County, Alabama.[1]

---

[1] The civil action was styled <u>Mayer Electric Supply Company, Inc., v. Southern States Electric, LLC, et. al.</u>, Case No. CV-2010-900242, in the Circuit Court for Lee County, Alabama. The consent judgment was entered on January 19, 2011. (Doc. 1).

1

Paragraph 3 of the Consent Judgment states as follows:

> Southern States and/or Lucas shall pay to Infinity monthly the sum of $3,000.00 beginning on October 5, 2010, and continuing on the fifth day of each month thereafter to and including November 5, 2012. The failure to make any such payment on or before the 15th day of any month shall constitute a default by Southern States and Lucas shall be deemed non-performance of the judgment payment terms, and shall constitute a default under the terms of this Judgment. Funds of Southern States and Lucas equal to the amount of this Judgment shall be deemed to be held in trust by Southern States and Lucas until paid in full to Infinity, and Southern States and Lucas shall be deemed to have a fiduciary duty to Infinity with respect to such funds, and with respect to the payments to be made to Infinity under the terms hereof.

Lucas paid five installments under the agreement and then defaulted.

On February 10, 2012, Infinity filed a timely complaint alleging that the indebtedness owed it by Lucas is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4). The parties filed a joint stipulation of facts. (Doc. 16). Lucas filed a motion for summary judgment on May 15, 2012, (Doc. 14) and Infinity filed a timely response on May 30, 2012. (Doc. 15). Notwithstanding the fact that the parties filed a joint stipulation of facts and had represented at the April 10, 2012 Scheduling Conference that there were no facts in dispute, Infinity argues in its brief that there are facts in dispute. Infinity did not submit anything in addition to its brief and the joint stipulation, leaving the Court unsure as to what might be in dispute. In an effort to clarify the underlying facts, the Court scheduled a hearing on the motion for June 19, 2012.

The hearing clarified several points.[2] First, the parties agreed that the $42,000 in dispute was the result of a contract dispute between Infinity, Lucas, and Lucas's business Southern States Electric, which has also filed a petition in bankruptcy in this Court. Second, the parties also

---

[2] A copy of the transcript of the June 19 hearing has been filed. (Doc. 18).

agreed that there was no trust in existence prior to entry of the January 19, 2011 judgment in Lee County. Third, neither Lucas nor Southern States Electric transferred any specific property or funds into a trust for the benefit of Infinity when the parties signed the consent judgment. At the June 19 hearing, counsel for Infinity argued that the debt owed by Lucas was transferred to the trust and that was sufficient under Alabama law to create a valid trust; the Defendant disputes that argument.

## II. CONCLUSIONS OF LAW

### A. Subject Matter Jurisdiction.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(1). This is a final order.

### B. Summary Judgment is Appropriate Here.

Lucas has moved for summary judgment based on the pleadings and a joint stipulation of facts submitted by the parties. Summary judgment is appropriate only if there is no genuine dispute as to any material fact. Fed. R. Bankr. P. 7056. Infinity opposes summary judgment arguing that it "has set forth specific facts showing that there is a genuine issue of material fact concerning the debt at issue is excluded from discharge due to defalcation." (Doc. 15, p. 6). Yet, Infinity filed nothing in support of its opposition, other than its brief, and agreed to a joint stipulation of facts, which, by its very terms, is undisputed by the parties. "The nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (internal citation omitted). The preceding section lays out the facts, which are based on the joint stipulation of facts and the June 19, 2012 hearing. Infinity did not

3

Case 12-03012    Doc 21    Filed 08/01/12    Entered 08/01/12 17:03:19    Desc Main
                   Document      Page 3 of 19

contest any of the facts laid in the joint stipulation either in its response or at the June 19 hearing. Regardless of how Infinity casts its argument, all of the matters in dispute are legal, not factual. Therefore, summary adjudication is appropriate here.

### C.  Section 523(a)(4): Infinity Must Prove the Existence of an Express Trust.

Infinity contends that the debt owed to it by Lucas is excepted from Lucas's discharge pursuant to 11 U.S.C. § 523(a)(4), which states that "[a] discharge . . . does not discharge an individual debtor from any debt – . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]"  Specifically, Infinity contends that the consent judgment entered into by Lucas, his company Southern States Electric, and Infinity created a trust, of which Lucas was a trustee and Infinity the beneficiary, and Lucas committed defalcation by defaulting on the payments under the consent judgment and filing bankruptcy.  The Eleventh Circuit recently commented on the seriousness of a discharge and finding an exception to that discharge under § 523(a)(4):

> A central purpose of the Bankruptcy Code is to provide an opportunity for certain insolvent debtors to discharge their debts and enjoy a fresh start.  However, Congress has decided to exclude from the general policy of discharge certain categories of debts. One of these categories includes debts incurred by fraud or defalcation while acting in a fiduciary capacity.  Such a debt is nondischargeable under 11 U.S.C. § 523(a)(4).  Congress evidently concluded that the creditors' interest in recovering full payment of such debts outweighed the debtor's interest in a complete fresh start.

***

4

Case 12-03012    Doc 21    Filed 08/01/12    Entered 08/01/12 17:03:19    Desc Main
Document      Page 4 of 19

> Furthermore, this Court must keep in mind that exceptions to discharge, such as § 523(a)(4), must be construed narrowly, and the burden is on the creditor to show that the exception to discharge applies. Id. (citing In re Mitchell, 633 F.3d 1319, 1327 (11th Cir.2011)).

Bullock v. BankChampaign, N.A., (In re Bullock), 670 F.3d 1160, 1164 (11th Cir. 2012) (citing Eavenson v. Ramey, 243 B.R. 160, 164 (N.D.Ga. 1999)). Thus, Infinity bears the burden of proving that its debt should be excepted from discharge under § 523(a)(4) and that burden is high, as this Court is charged with construing such exception narrowly. The Court must therefore turn to the underlying facts of the matter at hand to determine dischargeability, which turns on the question of whether Lucas breached a fiduciary duty resulting in a debt to Infinity.

It is well established that a creditor who seeks a determination that its debt is excepted from discharge pursuant to § 523(a)(4) must prove the existence of an express or technical trust and not merely the existence and breach of a fiduciary duty. "Section 523(a)(4)'s fiduciary defalcation exception is limited in application to situations involving express trusts, and does not have application to trusts implied by law, such as constructive or resulting trusts, or trusts implied from contract. The term 'fiduciary' in Section 523(a)(4) . . . refers to a trustee of an express trust." Houston v. Capps (In re Capps), 193 B.R. 955, 960 (Bankr. N.D.Ala. 1995) (citing Davis v. Aetna Acceptance Co., 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); Quiaf v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993); In re Cross, 666 F.2d 873, 881 (5th Cir. 1982); Carey Lumber Co. v. Bell, 615 F.2d 370, 374 (5th Cir. 1980); In re Angelle, 610 F.2d 1335, 1341 (5th Cir. 1980)). See also Alonso v. Guerrerro (In re Guerrerro), 2010 WL 2926534, *2-3 (Bankr. S.D. Fla.) (breach of fiduciary duties of good faith and best interests of a corporation under state laws is insufficient to establish § 523(a)(4) claim); Tarpon Point, LLC v.

5

Wheelus (In re Wheelus), 2008 WL 372470, *2-3 (Bankr. M.D. Ga. 2008) (general duty of good faith imposed on corporate officers under state law; such as loyalty, good faith, and fair dealing; is insufficient to establish liability pursuant to § 523(a)(4)); Evabank v. Richardson (In re Richardson), 2007 WL 2381990, *5 (Bankr. N.D. Ala. 2007) (existence of a security agreement does not give rise to a fiduciary relationship within the meaning of § 523(a)(4)); Hosey v. Hosey (In re Hosey), 335 B.R. 311, 323 (Bankr. N.D. Ala. 2006) (existence of a fiduciary relationship under state law not sufficient where express or technical trust do not exist); Kapila v. Talmo (In re Talmo), 175 B.R. 775, 779 (Bankr. S.D. Fla. 1994) (broad concept of fiduciary duty under state law is not equivalent to the narrower bankruptcy meaning of fiduciary capacity for the purpose of § 523(a)(4)). Thus, to prevail here, Infinity must prove the existence of an express or technical trust.

### D.  The Consent Judgment Did Not Create an Express Trust.

The Court will divide its discussion of the nonexistence of an express trust into three subsections. First, the Court will discuss the fundamental requirements of a trust. Second, the Court will consider whether there was a definite trust res. Third, the Court will consider whether public policy bars enforcement of a trust whose only purpose was to transform dischargeable debt on a contract into a nondischargeable debt for fraud or defalcation pursuant to § 523(a)(4).

#### 1.  General rules governing trusts.

Infinity does not dispute that it must show the existence of an express trust, but it argues that it has done so, citing the terms of the consent judgment. That judgment provides, in part, that:

> Funds of Southern States and Lucas equal to the amount of this
> Judgment shall be deemed to be held in trust by Southern States
> and Lucas until paid in full to Infinity, and Southern States and

6

>       Lucas shall be deemed to have a fiduciary duty to Infinity with
>       respect to such funds, and with respect to the payments to be made
>       to Infinity under the terms thereof.

(Doc. 16, Ex. A). The question thus becomes whether this provision gives rise to an express trust.

The Alabama Supreme Court has consistently held that:

> no particular form of words is required to create a trust, but [] any instrument in writing signed by the parties, or party, at the time of the trust's creation, or subsequently, will suffice, if the nature, subject matter, and objects of the trust are manifested with reasonable certainty by the instrument.

Jones v. Ellis, 551 So.2d 396, 399 (Ala. 1989) (citing First Alabama Bank of Tuscaloosa, N.D. v. Webb, 373 So.2d 631, 638 (Ala. 1979); Black v. Black, 286 Ala. 233, 238 So.2d 861 (1970); Gordon v. Central Park Little Boys League, 270 Ala. 311, 119 So.2d 23 (1960); Hodge v. Joy, 207 Ala. 198, 92 So. 171 (1921)); see also Green Tree Acceptance, Inc. v. Tunstall, 645 So.2d 1384, 1387 (Ala. 1994). "The fundamental nature of a trust is the division of title, with the trustee being the holder of legal title and the beneficiary that of equitable title. By definition, the creation of a trust must involve a conveyance of property." 76 Am. Jur. 2d § 1 (2005); see also In re Capps, 193 B.R. at 961 (quoting Gordon v. Central Park Little Boys League, 270 Ala. at 316, 119 So.2d at 27). Specifically, an express trust has the following features:

> (1) it is a relationship; (2) it is a relationship of a fiduciary character; (3) it is a relationship with respect to property; (4) involves the existence of equitable duties imposed upon the holder of the title to the property to deal with it for the benefit of another; and (5) it arises as a result of a manifestation of an intent to create the relationship.

Id. at 962 (quoting Austin W. Scott, Abridgment of the Law of Trusts § 2.8 (1960)). The courts

must look to the facts and circumstances of a particular case to determine if the facts create an express trust. Id. at 961.

At first glance, this Court cannot help but to notice all the "deeming" taking place in the consent judgment. That is, "the amount of this Judgment shall be deemed to be held in trust." Moreover, "Lucas shall be deemed to have a fiduciary duty." Black's Law Dictionary defines "deem" as:

> 1. To treat (something) as if (1) it were really something else, or (2) it had qualities that it does not have <although the document was not in fact signed until April 21, it explicitly states that it must be deemed to have been signed on April 14>.

Black's Law Dictionary 446 (8th ed. 1999). Black's Law Dictionary goes on further to define "deem":

> "Deem" has been traditionally considered to be a useful word when it is necessary to establish a legal fiction either positively by deeming something to be what it is not or negatively by deeming something not to be what it is. . . . All other uses of the word should be avoided . . . Phrases like "If he deems fit" or "as he deems necessary" or "nothing in this Act shall be deemed to . . ." are objectionable as unnecessary deviations from common language. . . . "Deeming" creates an artificiality and artificiality should not be resorted to if it can be avoided.

Id. (quoting G.C. Thornton, Legislative Drafting 99 (4th ed. 1996)). Infinity's use of the term "deem" in this context would appear to be an admission that there is no express trust, for if there were an express trust, the consent judgment would not need to use the word "deem" to create the legal fiction, a trust, when in fact there is none. Were it not so, the document would simply define the trust and there would be no occasion to "deem" anything. If "an express trust may be created even though the parties do not call it a trust, and even though they do not understand

precisely what a trust is;" In re Capps, 193 B.R. at 961 (quoting Scott, supra, at 26), then the converse is equally true: just because the parties deem a trust into existence does not necessarily mean they created a trust.

**2. No trust came into existence here because no property was transferred at the time the trust was created.**

Lucas contends that no property was transferred into the trust and, as a result, no trust came into existence. "It is well established that a trust cannot be created where there is no trust property, and that an interest which has not come into existence or an expectation or hope of receiving property in the future cannot be held in trust." C.P. Jhong, Annotation, Creation of Express Trust in Property to be Acquired in Future, 3 A.L.R. 3d 1416, § 3 (1965). "Under common-law principles, a trust is created in property; a trust therefore does not come into existence until the settlor identifies an ascertainable interest in property to be the trust res." Begier v. Internal Revenue Service, 496 U.S. 53, 62, 110 S.Ct. 2258, 2265 (1990) (The Supreme Court was discussing the distinction between common-law trusts requiring a particular property and a statutory trust under a provision of the tax code specifically allowing an abstract property.) (citing G.Bogert, Law of Trusts and Trustees § 111 (rev. 2d ed. 1984)). At common-law, "the settlor sets aside particular property as the trust res[.]" Id.

Referring again to the consent judgment:

> Funds of Southern States and Lucas equal to the amount of this Judgment shall be deemed to be held in trust by Southern States and Lucas until paid in full to Infinity, and Southern States and Lucas shall be deemed to have a fiduciary duty to Infinity with respect to such funds, and with respect to the payments to be made to Infinity under the terms hereof.

9

Case 12-03012   Doc 21   Filed 08/01/12   Entered 08/01/12 17:03:19   Desc Main
Document      Page 9 of 19

It is apparent that the judgment does not place definite funds into a trust, but rather funds in an amount equal to the judgment amount were "deemed" to be held in trust. The trust res – the funds – were not actual, particular funds, but a mere fiction, an abstract.

At the June 19 hearing, the Court had the following colloquy with counsel for Infinity:

> [The Court] Tell me what is the trust *res* here?
>
> [Plaintiff's counsel] It is the funds owed to Infinity. At that time, it was forty-two thousand dollars.
>
> [Court] Okay. So there is a debt owed and I think that is established, but just the fact that there is a debt in existence doesn't mean there is necessarily any trust *res*; does it. I mean, I am not following that part of what you are telling me.
>
> [Counsel] I believe that, you know, if we did not have the trust language in the consent judgment, no, there would be no trust but, because we specifically established–
>
> [Court] . . . I read the judgment. It says something about a trust but what is the thing, the *res*, that is going into trust at that point?
>
> [Counsel] Just the forty-two thousand dollars.
>
> [Court] But, I mean, there was no – there is a debt. It's not like he had forty-two thousand dollars sitting in his pocket; was there?
>
> [Counsel] I don't believe there was a specific forty-two thousand, you know, marked bills. It was just in the abstract, forty-two thousand dollars.

(Doc. 19, pp. 4-5). This is a clear admission by Infinity that there was no trust res, only the 42,000 abstract dollars that Lucas owes Infinity. To put the matter simply, "a debt is not a trust and there is no fiduciary relationship between debtor and creditor as such." First Nat'l Bank of Mobile v. Pope, 274 Ala. 395, 401, 149 So.2d 781, 786 (1963) (citing Downey v. Humphreys,

Case 12-03012    Doc 21    Filed 08/01/12    Entered 08/01/12 17:03:19    Desc Main
Document    Page 10 of 19

102 Cal.App.2d 323, 227 P.2d 484 (1951)); see also 76 Am. Jur.2d Trusts, § 13 (2005). If the debtor has unrestricted use of the money, then it is a debt and not a trust. Id.

Another way to look at it is what sort of interest or property can be placed in a trust. The Alabama Supreme Court has ruled on the question of what may be put in trust:

> One who has a bare expectancy or hope of acquiring property in the future, with no present interest therein, cannot create a present trust in such property. . . . An expectation or hope of receiving property in the future cannot be held in trust.

Bowden v. Teague, 276 Ala 142, 144-45, 159 So.2d 844, 847 (1964) (internal citations omitted). In Bowden, the trust failed because the trust settlor's expectancy, that he would inherit particular property in the future, was not an interest in property and therefore not the kind of thing that can form a *trust res*, even when the settlor later inherited the property. More specifically, the settlor in Bowden lacked a transferable interest in the inherited property. Id. at 145, 159 So.2d at 847 (citing 54 Am. Jur., Trusts, § 32, p. 44).

In the case at bar, a few things are noticeable about the $42,000 in dispute. The $42,000 was the settled upon amount to settle a contract dispute between the parties. Lucas did not have an expectancy of coming into $42,000 from a particular source; rather the amount owed; or in the words of Infinity's counsel, the 42,000 "abstract" dollars; simply was deemed to be held in trust. The parties did not have an expectation of obtaining a concrete $42,000 to be placed in the trust, only a bare hope that Lucas would earn enough money in order to pay Infinity. A bare hope is not the kind of thing that one can place in trust and hold for another. Second, a debtor who owes a debt cannot transfer that debt as he has no property interest in a debt that he owes to another. To be sure, the creditor who is owed a debt has a property right that can be transferred to another,

11

but the converse is not true. As Lucas cannot be said to own his debt to Infinity, there was nothing transferred into trust and for that reason, the trust failed. As there is no express trust, there can be no breach of a fiduciary duty and hence the failure to pay the debt owed is not excepted from discharge pursuant to § 523(a)(4).

### 3. Stipulations that a debt will not discharge in the future are not enforceable as they violate public policy.

Courts have long established that a stipulation to the effect that a debt will not discharge in a future bankruptcy case is not enforceable as it is against public policy. Lichtenstein v. Barbanel, 161 Fed. Appx. 461, 2005 WL 3476956 (6th Cir. 2005); The Bank of China v. Huang, 275 F.3d 1173, 1177 (9th Cir. 2002); Klingman v. Levinson, 831 F.2d 1292, 1296, n. 3 (7th Cir. 1987); see also Hayhoe v. Cole (In re Cole), 226 B.R. 647, 650 (9th Cir. B.A.P. 1998); In re Weitzen, 3 F.Supp. 698 (S.D.N.Y. 1933); Rice, Heitman & Davis, S.C. v. Sasse (In re Sasse), 438 B.R. 631, 646 (Bankr. W.D. Wis. 2010); Tamasco v. Nicholls (In re Nicholls), 2010 WL 5128627, *2 (Bankr. E.D.N.Y. Dec. 10, 2010); Simmons Capital Advisors, Ltd., v. Bachinski (In re Bachinski), 393 B.R. 522, 532-33 (Bankr. S.D. Ohio 2008); Greensward, Inc. v. Cietek (In re Cietek), 390 B.R. 773, 779 (Bankr. N.D.N.Y. 2008); Spyke, Inc. v. Zufall (In re Zufall), 2007 WL 601568, *3 (Bankr. D.S.D. Feb. 21, 2007); Hester v. Daniel (In re Daniel), 290 B.R. 914, 921-22 (Bankr. M.D. Ga. 2003); Kohlenberg v. Baumhaft (In re Baumhaft), 271 B.R. 517, 521 (Bankr. E.D. Mich. 2001); Airlines Reporting Corp. v. Mascoll (In re Mascoll), 246 B.R. 697, 706-07 (Bankr. D.D.C. 2000); Markizer v. Economopoulos (In re Marzier), 66 B.R. 1014, 1018 (Bankr. S.D. Fla. 1986); Johnson v. Kriger, 2 B.R. 19, 22 (Bankr. D. Ore. 1979). The courts unanimously hold that prepetition stipulations to waive discharge, if allowed, would eviscerate

the protections of the Bankruptcy Code. If it were that easy to avoid a discharge in bankruptcy, every creditor would insert a clause waiving discharge into every contract, promissory note, and lease.

Given this robust and well-established rule, it follows that one may not avoid the rule's application through stipulations in an agreed judgment that refer to a nonexistent trust and hypothetical trust res. To be sure, the doctrines of claim preclusion and issue preclusion apply in bankruptcy court; however, a state court judgment may not serve as a subterfuge to avoid this well-established public policy. There is an extensive body of law governing the preclusive effect of state court judgments on subsequent bankruptcy proceedings. See, e.g., Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In Felsen, suit was brought on a debt and then settled by way of a consent judgment, which established the amount of the debt but did not make reference to the plaintiff's fraud claim. Felsen filed bankruptcy a short time later and Brown filed an adversary proceeding in bankruptcy court contending that the debt was excepted from discharge as a result of the debtor's fraud. Felsen argued that Brown could not look behind the state court judgment and was bound by it. The Supreme Court rejected the claim concluding that the issue of dischargeability was not squarely in issue. The Supreme Court held that a bankruptcy court should make the "fullest possible inquiry" and that it was not bound by the form of the judgment nor confined to a review of the state court record. Id. at 138-39, 99 S.Ct. at 2212-13.

Infinity does not contend that the form of the consent judgment from Lee County binds this Court. Nevertheless, it is clear that this Court is free to look to the underlying facts and make its own determination as to whether there are facts supporting Infinity's claim that an

13

express trust exists and whether Lucas engaged in fraud or defalcation. Moreover, the rule is the same whether the stipulation arises out of a consent judgment or simply an agreement between the parties. Archer v. Warner, 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003).

Looking at Klingman again, the Seventh Circuit applied the doctrine of issue preclusion to the state court consent decree and found the debt nondischargeable under § 523(a)(4). Klingman v. Levinson, 831 F.2d 1292, 1294. The court did recognize the general rule that stipulations to the effect that a debt in not dischargeable are against public policy and are not enforceable. Id. at 1296, n. 3. However, the court found that because the consent decree laid out the elements and facts of § 523(a)(4) – a preexisting trust, fiduciary duty, and a debt caused by fraud or defalcation at the time of the fiduciary duty – the consent decree actually litigated the same issues before the court. On that basis, the debt was excepted from discharge. In contrast, in the case at bar, the consent judgment does not stipulate any of the elements or facts for a § 523(a)(4) action. Rather, the consent judgment is only empty words, devoid of substance, attempting to ape the language of § 523(a)(4) by deeming a trust into existence.

The Court can distill two propositions from these cases. First, stipulations to the effect that a debt will not discharge in a subsequent bankruptcy case are not enforceable as they violate public policy. Second, Felsen and Klingman teach us that regardless of the form of a stipulated judgment, the bankruptcy court must make the "fullest possible inquiry" to determine whether a debt should be excepted from discharge. A debt may not be "deemed" nondischargeable, rather a sufficient factual foundation must support a determination of nondischargeability, whether the factual foundation comes from the state court judgment or the bankruptcy court's own findings.

Case 12-03012    Doc 21    Filed 08/01/12    Entered 08/01/12 17:03:19    Desc Main
Document      Page 14 of 19

Absent a factual foundation supporting a § 523(a)(4) finding, the debt will discharge, regardless of any language to the contrary contained in a stipulation or a stipulated judgment.

### E.  The Court Will Not Award Attorney's Fees to the Defendant.

Lucas, as part of his summary judgment motion, has requested this Court to award attorney's fees incurred defending this Adversary Proceeding.  (Doc. 14, p. 8).  Lucas, or rather his attorney, does not cite to any specific rule justifying an award of attorney's fees.  However, this Court will still consider Lucas's request under the various possibilities.

#### 1.  The Bankruptcy Court's Inherent Power to Sanction Attorneys.

"Federal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients."  In re Evergreen Sec., Ltd., 570 F.3d 1257, 1263 (11th Cir. 2009) (quoting In re Walker, 532 F.3d 1304, 1309 (11th Cir.2008)).  "This power is derived from the court's need to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."  Id. (quoting Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th Cir.2006) (internal citations omitted)).  Moreover, the Bankruptcy Code provides its own source of power for bankruptcy courts to act sua sponte: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); see also Evergreen, 570 F.3d at 1263.

A court's inherent power allows the court discretion to award attorney's fees in very specific cases, even though the "American Rule" prohibits fee-shifting in most cases.  Chambers v. NASCO, Inc., 501 U.S. 32, 45, 111 S.Ct. 2123, 2133 (1991).  While there are three exceptions, only one is potentially applicable to this proceeding: "the court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  Id.

at 46, 111 S.Ct. at 2133 (quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622-23, 44 L.Ed.2d 141 (1975) (quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974))). Bad-faith can arise not only from the filing of a meritless case, but also in an attorney's actions throughout the course of litigation. Roadway Exp., Inc. v. Piper, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464 (1980) (citing Hall v. Cole, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973)). In the case at hand, the Court notes that none of the Plaintiff's or Plaintiff's counsel's actions have been inappropriate during the course of these proceedings. Moreover, although this Court is ruling against the Plaintiff and in favor of the Defendant, the case was not meritless: the Plaintiff attempted to navigate the discharge exception waters, but, unfortunately, their arguments floundered.

Additionally, the Supreme Court has cautioned courts from over zealously using their inherent powers to sanction attorneys. Chambers, 501 U.S. at 46, 111 S.Ct. at 2133. Although a court can rely on its inherent powers when a statute or rule covers the sanctionable conduct and the statute or rules adequately address the behavior, then the court should look to them for its power. Id. With that in mind, the Court will now look at the other two possible sources for awarding attorney's fees in a § 523 discharge exception action.

### 2. The Bankruptcy Court's Fee-Shifting Powers under § 523(d) and Fed. R. Bankr. P. 9011.

The Bankruptcy Code and Rules provide two additional possibilities for shifting the attorney's fees. Section 523(d) states that:

> [i]f a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such

Case 12-03012    Doc 21    Filed 08/01/12    Entered 08/01/12 17:03:19    Desc Main
Document      Page 16 of 19

> debt is discharged, the court shall grant judgment in favor of the
> debtor for the costs of, and a reasonable attorney's fee for, the
> proceeding if the court finds that the position of the creditor was
> not substantially justified, except that the court shall not award
> such costs and fees if special circumstances would make the award
> unjust.

11 U.S.C. § 523(d). What is evident from this section is its narrow applicability – it only applies to cases brought under § 523(a)(2) and consumer debt. As this is a § 523(a)(4) claim and also not a consumer debt, § 523(d) cannot be used to grant the Defendant attorney's fees.

The other possible basis for shifting the attorney's fees is in the form of sanctions under Fed. R. Bankr. 9011. Rule 9011(c) details how the Court may impose sanctions: either by motion or on the Court's initiative. There are several requirements under Rule 9011(c)(1)(A) for a motion for sanctions. First, the moving party must file a motion separately from other motions or requests and the motion must describe the specific conduct alleged to violate Rule 9011(b). The Defendant has not even satisfied this initial step: the request for attorney's fees was a single sentence at the end of the Defendant's motion for summary judgment and thus this Court will not continue its analysis under this subsection.

However, under Rule 9011(c)(1)(B), a court can "on its own initiative . . . enter an order describing the specific conduct that appears to violate subdivision (b) and direct[] an attorney . . . to show cause why [they have] not violated subdivision (b)[.]" Subsection (b) states that

> [b]y presenting to the court . . . a petition, pleading, written motion,
> or other paper, an attorney . . .is certifying that to the best of the
> person's knowledge, information, and belief, formed after an
> inquiry reasonable under the circumstances, --
>
> (1) it is not being presented for any improper purpose, such as to
>     harass or to cause unnecessary delay or needless increase in the
>     cost of litigation;

17

Case 12-03012    Doc 21    Filed 08/01/12    Entered 08/01/12 17:03:19    Desc Main
Document    Page 17 of 19

> (2) the claims defenses, and other legal contentions therein are
> warranted by existing law or by a nonfrivolous argument for
> the extension, modification, or reversal of existing law or the
> establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary
> support or, if specifically so identified, are likely to have
> evidentiary support after a reasonable opportunity for further
> investigation or discovery; and
>
> (4) the denials or factual contentions are warranted on the evidence
> or, if specifically so identified, are reasonably based on a lack
> of information or belief.

Fed. R. Bankr. P. 9011(b). To this Court's knowledge, there has been no evidence suggesting that the Plaintiff's complaint was intended to harass the Defendant or cause a needless increase in the cost of litigation, therefore subsection (b)(1) does not apply. And, although this Court is ruling against the Plaintiff, an adverse ruling does not mean the complaint was frivolous. The consent judgment did speak of a trust, therefore there was a legitimate question as to whether it resulted in a non-dischargeable debt. That leaves subsections (b)(3) and (4) to consider. While this Court is a little disturbed that the Plaintiff agreed to joint stipulations of fact and then subsequently opposed the motion for summary judgment arguing facts were in dispute, it appeared from the hearing that this was due more to Plaintiff's counsel's misunderstanding of the law rather than any actual bad faith or dereliction of duties. Therefore, this Court does not find it appropriate to award attorney's fees to the Defendant under the provisions of Rule 9011.

### III. CONCLUSION

This Court finds that summary judgment is appropriate here as there are no facts in dispute and all that remains is purely a legal question: does a trust exist on which to base an 11

U.S.C. § 523(a)(4) claim? Considering the facts and the law, this Court finds that the state court consent judgment did not create a trust as there was no specific property identified to form the *trust res*. Therefore, this Court grants the Defendant's motion for summary judgment and dismisses the case with prejudice. Additionally, this Court finds the Defendant's request for attorney's fees is unfounded and the Court denies the Defendant's request.

Done this 1st day of August, 2012.

/s/ William R. Sawyer
United States Bankruptcy Judge


c: Kimberly Diane White, Attorney for Plaintiff
   Russell C. Balch, Attorney for Plaintiff
   Michael A. Fritz Sr., Attorney for Defendant